Jorge A. Pantoja
T-76093
P.O. Box 2210
Susanville, CA 96127

Orig Filed

08 MAY -7 PM 1:27

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

JORGE A. PANTOJA,

    Petitioner,

v.

K. PROSPER, Warden,

    Respondent.

C 07-3572 CRB (PR)

**TRAVERSE**

Petitioner, Jorge A. Pantoja, by way of Traverse to Respondent's Answer, alleges as follows:

### I.

Petitioner admits he is in custody as stated by respondent. However, petitioner contends that his custody is "unlawful" for the reasons set forth herein and in the Petition for Writ of Habeas Corpus and supporting exhibits.

### II.

Admitted as to the cause of petitioner's detention.

1

### III., IV., V.

Admitted.

### VI.

Petitioner's conviction was obtained in violation of federal constitutional rights, and each and every claim in the petition has merit. Specifically, petitioner contends there was insufficient evidence of malice to sustain petitioner's conviction for second degree murder.

### VII.

Petitioner stands by all factual averments in the petition, as buttressed by the Petition for Review and all state pleadings.

### VIII.

Petitioner submits to the respondent's lodgments of the state trial and appellate proceedings as itemized in the accompanying receipt for exhibits.

**WHEREFORE,** Petitioner respectfully requests:

(1.) that an evidentiary hearing be granted;

(2.) that the court grant the writ of habeas corpus;

(3.) all other appropriate relief.

Dated: May 2, 2008

                                          Respectfully submitted,

                                          *JORGE PANTOJA*
                                          Jorge A. Pantoja
                                          Petitioner

Jorge A. Pantoja
T-76093
P.O. Box 2210
Susanville, CA 96127


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


JORGE A. PANTOJA,                             C 07-3572 CRB (PR)

Petitioner,                                   **POINTS AND AUTHOTITIES
                                              IN SUPPORT OF TRAVERSE**

v.


K. PROSPER, Warden,

Respondent.


## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. 2254(a). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

3

the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C 2254(d).

In so far as this stage of the proceedings go, petitioner concedes to the respondent's position that the AEDPA controls, but disagrees with any aspect of respondent's contentions that the AEDPA precludes relief.

## STATEMENT OF THE CASE

Petitioner concedes to the Statement of the Case contained in the respondent's Memorandum of Points and Authorities. (P&A, p. 1-2)

## STATEMENT OF FACTS

Petitioner concedes to the Statement of Facts contained in the respondent's Memorandum (P&A., p. 2-16), and the unpublished opinion of the Court of Appeals. (Respondent's Lodgments, Exh. G)

## LEGAL ARGUMENT

**Petitioner disagrees the state court reasonably found there was sufficient evidence of malice to support the second degree murder conviction**

The law on insufficiency of evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must first determine whether, viewing the evidence and the inferences to be drawn from it in light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). **Sufficiency claims are judged by the elements defined by state law.** *Id.* at 324, n. 16.

4

In reviewing a sufficiency of evidence claim under state law, the federal court's task is to determine whether a reasonable trier of fact could have found that the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. (See, e.g. *People v. Morris* (1988) 46 Cal.3d 1, 19)  A conviction that is not supported by sufficient evidence violates both the Due Process Clauses of the Fourteenth Amendment to the California Constitution, and is invalid for that reason. (*Jackson v. Virginia* (1979) 443 U.S. 307, 313-324; *People v. Rowland* (1992) 4 Cal.4th 238, 269)

Moreover, the California Supreme Court has ruled that, to be legally sufficient, evidence must be reasonable, credible, and of solid value. (*People v. Marshall* (1997) 15 Cal.4th 1, 35; *People Johnson* (1980) 26 Cal.3d 557, 578)  The judgment must be supported by "substantial evidence" which is defined as evidence that "reasonably inspires confidence and is of 'solid value.'" (*Morris*, supra, at p. 19, quoting from *People v. Bassett* (1968) 698 Cal.2d 122, 139)

Applying these standards to the case at bench, there is no dispute that petitioner killed Maria Moreno and there is no dispute that the killing was intentional and unlawful. The only dispute is whether the killing was manslaughter or whether it rose to second-degree murder because of the presence of malice aforethought.

As the California Supreme Court explained in *People v. Rios* (2000) 23 Cal.4th 450, at page 460:

> California statutes have long separated criminal homicide into two classes, the greater offense of murder and the lesser included offense of manslaughter. The distinguished feature is that murder includes, but manslaughter lacks, the element of malice. (Compare 187, subdivision (a) ['[m]urder is the unlawful killing of a human being ... with malice aforethought"] with 192 ["[m]anslaughter is the unlawful killing of a human being without malice"].)

> Malice exists, it al all, only when an unlawful homicide was committed with the "intentional unlawfully to take away the life of a fellow creature" (188), or with awareness of the danger and a conscious disregard for life (Ibid.; *People v. Whitfield* (1994) 7 Cal.4th 437, 540 [27 Cal.Rptr.2d 858, 868 P. 2d 272]; see also *People v. Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr.43, 673 P.2d 279]["wanton disregard for human life"]). [FN6] In certain circumstances, however, a finding of malice may be precluded, and the offense limited to manslaughter, even when an unlawful homicide was committed with intent to kill. In such a case, the homicide, though not murder, can be no less than voluntary manslaughter.

In this case, there was insufficient evidence of malice to justify a finding of second-degree murder. As petitioner's trial counsel argued to the trial court, there was no evidence that petitioner went to Montero's apartment with the intent to kill her. As the trial court found (3 RT 828), the evidence was uncontroverted that petitioner did not enter the apartment with a knife or any other weapon. He testified that the knife was under the bed and, in fact, after Montero's death, two knives were found under the bed. (3 RT 614)

Petitioner's testimony of what took place, which was consistent with what he told his sister-in-law and forensic psychologist Jose La Calle, as well as with his testimony in his first trial (*People v. Pantoja* (2004) 122 Cal.App.4th 1, 6), was not controverted. He testified that when he went to the apartment to talk about visitation rights with his three-year-old daughter, Montero told him he was never going to see her again. (2 RT 349-361) When petitioner told Montero that if he did not have his daughter, he wanted to die, Montero told him to just do it and to leave her and their daughter alone. (2 RT 361-362) Montero pushed the knife into his chest and told him, in Spanish, to go fuck his mother. (2 RT 362, 498-499) After that, petitioner remembered nothing, but he obviously stabbed Montero, resulting in her death from multiple stab wounds.

The physical evidence was entirely consistent with petitioner's testimony. Most significantly, the tip of the butcher knife was broken during the scuffle, and during the

6

autopsy, they found the tip to be imbedded in Montero's arm. (1 RT 34-35) The knife that caused the upper chest wounds to petitioner was in a sharpened and not a broken state. In contrast, the wounds to petitioner's stomach were inflicted with a less pointed knife. (2 RT 530-33, 542-43) This is consistent with petitioner's testimony that Montero first pushed the knife into his chest. Then he stabbed her, causing wounds from a sharp knife, and then, after the tip was broken off in her arm, with a less-sharp knife. Finally, when Star Bakas saw petitioner attempting to stab himself in the stomach, this was with the less-sharp knife.

In addition, the testimony of Department of Justice criminalist Kay Belschener that there were spatters of petitioner's blood on Montero's pant leg is consistent with petitioner's testimony that he was stabbed by Montero while both of them were standing and facing each other. The spatter would not have been on Montero's pants if petitioner had stabbed himself only after she was stabbed and was lying on the couch where her body was found.

In its ruling, the trial court emphasized that "this was a confrontation created by Mr. Pantoja to achieve a result," and it was created with malice (3 RT 830), a position also taken by the respondent. However, although it was undisputed that petitioner went to Montero's apartment just as he had previously to see their young daughter, there was no evidence that petitioner confronted Montero for any purpose other than to try to convince her to agree to allow him to visit their daughter.

Yet the respondent argues that existed "substantial evidence which contradicted his version of events." (P&A, p. 22) In so doing, the respondent points to the testimony

of three year Kenia and Star Bakas. Their version of events, according to the respondent, directly challenged petitioner's story:

> "[A] more prolonged interaction with Montero, involving an argument over him seeing Kenia, his threatening to kill himself, Montero telling him there were knives under the bed, getting the knife, arguing further with Montero, crying and going to the bedroom, coming out and arguing further with Montero, and Montero insulting him and pushing the knife into him. Additionally, when Bakas entered the apartment, she did not see any blood on petitioner's t-shirt, or any indication of a chest injury. This too negated petitioner's story of a provocation."
> (P&A, p. 22-23)

This is incorrect. The facts support a spur of the moment confrontation in that the petitioner is obviously not in his right mind. The fact he is likely "borderline retarded" – in addition to the fact he did not bring the knife with him - also makes the petitioner's version of events just as believable. Despite a three-year-old Kenia, and their neighbor Bakas, both remembering it happened very quickly, this doesn't mean petitioner's version is incorrect. Petitioner's version completely coalesces with the facts, challenging a sufficiency of evidence for murder, in that during times of crisis few remember everything exactly the same.

The respondent says the California Court of Appeals held that the petitioner's "experts were not conclusive" (P&A., p. 24), and therefore this makes their decision coalesce with the principles of *Jackson*. However, the testimony surrounding the conclusions of these experts were credible, and places the actions of the state courts in direct conflict with *Jackson* and it progeny. Moreover, by doing so, the respondent endeavors to take away from the fact "the trial court's finding that petitioner had not brought a knife to the apartment, but instead obtained the knife there." (P&A, p. 24) Thus, by the respondent's own admission, this was not a case of premeditation, but a provoked situation that manifested from a bad situation between two people. Making the

8

matter worse, a child was caught in the middle, whose recollection of the events is being brought into question – where her memory, like the neighbor, should not be perceived as definitive.

There is no doubt that the killing of Maria Montero was intentional and it was a sad tragedy. However, it was what the California Supreme Court has called "an unreflective explosion of violence." See *People v. Raley* (1992) 2 Cal.4th 870, 888. This Court should grant this petition and reduce petitioner's judgment of conviction to manslaughter in that the Court of Appeal's came to a decision contrary to and an unreasonable application of *Jackson* and its progreny, which runs afoul of 2254(d) of the AEDPA, and therefore cannot hold muster under the sufficiency of evidence principles of the state court cases cited in this Traverse.

## CONCLUSION

Based on the foregoing, petitioner should be granted an evidentiary hearing on his claim, and the petition should ultimately be granted.

Dated: May 2, 2008

Respectfully submitted,

JORGE PANTOJA
Jorge A. Pantoja
Petitioner

9

**PROOF OF SERVICE BY MAIL**

[CCP 1015; 2015.5; 28 USC 1746]

I, Jorge A. Pantoja  AM A RESIDENT OF CALIFORNIA STATE PRISON IN SUSANVILLE, CALIFORNIA.
I AM OVER THE AGE OF (18) YEARS AND AM A PARTY TO THE ABOVE-ENTITLED ACTION. MY STATE PRISON ADDRESS IS: P.O. Box 2210 Susanville, California, 96127.

ON May , 2 2008 , I SERVED THE FOLLOWING:

(State Title of Document)

TRAVERSE TO ANSWER

ON THE PARTY HEREIN BY PLACING A TRUE COPY THEREOF, ENCLOSED IN A SEALED ENVELOPE, WITH POSTAGE THEREON FULLY PAID, OR TRUST WITHDRAWAL FORM FOR STATE REMITTANCE, TO BE HANDLED BY MAILROOM STAFF AT CCC.  SAID SEALED ENVELOPE WAS PLACED INTO THE HANDS OF CORRECTIONAL PERSONNEL, OR MAILBOX MADE AVAILABLE TO THE INMATES AT THE PRISON; SAID SEALED ENVELOPE IS ADDRESSED AS FOLLOWS:

| Sharon G. Birenbaum | United State Dist. Ct. |
|---|---|
| Deputy Atty. Gen. | Northern Dist. |
| 455 Golden Gate Avenue, Suite 11000 | 450 Golden Gate Avenue, |
| San Francisco, CA 94102-7004 | San Francisco, CA 94102-3483 |

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL, AT THE PLACE SO ADDRESSED, AND/OR THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: May , 2 200 8 .

JORGE PANTOJA
DECLARANT
Jorge A. Pantoja

[Print/Type Full Name]

Jorge Pantoja
T-76093
P.O. Box 2210
Susanville, CA
96127-2210

Legal Mail

U.S. Dist. Ct.
Northern Dist.
450 Golden Gate
San Francisco
94102